UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KELLY RAWLEY,<br><br>      Plaintiff,<br><br> v.<br><br>J.L. SHERMAN EXCAVATION CO., a Washington Corporation, JEFF & PAM SHERMAN, a marital community,<br><br>      Defendants. | NO: 2:18-CV-0256-TOR<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT is Plaintiff Kelly Rawley's Motion for Partial Summary Judgment on Liability and Affirmative Defenses (ECF No. 14). Defendants oppose the motion. ECF No. 17. The Motion was submitted without a request for oral argument. For the reasons discussed below, the Motion (ECF No. 14) is denied.

**STANDARD OF REVIEW**

A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The moving party bears the "burden of establishing the nonexistence of a 'genuine issue.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Id.*

Only admissible evidence may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). As such, the nonmoving party may not defeat a properly supported motion with mere allegations or denials in the pleadings. *Liberty Lobby*, 477 U.S. at 248. The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Id.* at 255. However, the "mere existence of a scintilla of evidence" will not defeat summary judgment. *Id.* at 252.

## BACKGROUND

For purposes of this motion, the relevant facts construed in favor of Defendants, are as follows. In 1996, Plaintiff Kelly Rawley began working for Defendants Jeff and Pam Sherman at J.L. Sherman Excavation Co. as a miner and

"Crusher Supervisor". ECF No. 1 at 2, ¶ 9. On October 6, 2015, Plaintiff and Defendants were involved in a heated, work-place dispute involving Plaintiff's role as a representative of the company in dealing with the Mine Safety and Health Administration (MSHA). ECF No. 20-1 at 4. Despite Plaintiff's uncouth approach to addressing the issue, Defendants told Plaintiff that he was not fired, and that Defendants "would not have ended [the] relationship like this." ECF No. 20-1 at 4. On October 7, 2015, Defendants laid Plaintiff off early for the season and provided pay to offset the early release—most employees are laid off in November or December due to lack of work in the winter months. ECF Nos. 15-2 at 2; 22-2. Plaintiff then filed (1) a workmen's compensation claim with the Washington Department of Labor and Industries and (2) a retaliation claim with MSHA.

### A. **Workmen's compensation claim; termination**

According to Defendants, they did not know Plaintiff had any health problems until early October 2015 when Plaintiff mentioned trouble breathing and issues with coughing. ECF No. 15-7 at 4. According to Ms. Sherman, she spoke with Plaintiff regarding his physical condition several times in 2015 and Plaintiff's responses were that "he was doing okay." ECF No. 18 at 3, ¶ 6. In November of 2015, however, Plaintiff filed a workmen's compensation claim with the Washington Department of Labor and Industries for alleged "conditions of the abdominals, low back, genitals, shoulder and upper arm, pulmonary and rhinitis".

*See* ECF Nos. 1 at 2, ¶ 11; 14 at 3; 15-1; 20-1 at 4. Defendants received notice of Plaintiff's alleged conditions from the Department of Labor and Industries. ECF No. 15-7 at 4. According to Ms. Sherman:

> [Plaintiff was claiming] he had COPD. He said he might have silicosis. Just – I mean everything was named in there. And we're in shock. It's like wow, this guy has all this wrong with him.

ECF No. 15-7 at 4.

"Defendants terminated Plaintiff's employment in April 2016, before the beginning of the 2016 mining season, and provided notice through their attorney." ECF No. 16 at 2, ¶ 8. The letter provided by their attorney stated:

> This letter is to inform you that JL Sherman Excavation Company can no longer employ Kelly Rawley. Over the course of this winter, Mr. Rawley brought to our attention serious medical conditions which render him unable to continue as Crusher Supervisor. Mr. Rawley suffers from various contended conditions of the abdominals, low back, genitals, shoulder and upper arm, pulmonary and rhinitis.
>
> JL Sherman Excavation Company was unaware of these conditions before this winter. Though the Department of Labor and Industries has rejected Mr. Rawley's claim as being work related, the medical conditions that Mr. Rawley suffers have a severe impact on his ability to safely perform his duties.
>
> Safety of the Shermans' employees is their top priority. Unsafe conditions cannot be ignored. Upon reopening the operation this spring, it was discovered that "shortcuts" were taken by Mr. Rawley in repairs to the crusher. Mr. Rawley was the crusher supervisor. Many parts that were provided to Mr. Rawley were never used for repairs. This is uncharacteristic of Mr. Rawley's work over the last 19 plus years and can only be explained by his severe health conditions.

ECF No. 15-5 at 1.

According to Ms. Sherman, Defendants terminated Plaintiff because of his "behavior" and because "they couldn't have someone leading the other guys with all the heath issues that he was claiming." ECF No. 15-7 at 4. In responding to a DOL inquiry as to why Plaintiff was not brought back in the Spring of 2016, Defendants explained:

> The biggest reason was his health. We didn't realize that he had so many problems. We didn't find out until he filed his workman's comp claim. [Ms. Sherman:] We couldn't have someone leading the other guys with all the health issues that he was claiming. It is a safety thing for the rest of the employees.

ECF No. 15-6 at 1; 20-1 at 3. In response to the question as to what information Defendants used in making the determination, Defendants explained:

> [Plaintiff] filed a bunch of workman's comp claims and that is how we found out about all his health problems at that time, we didn't contest them. We became aware when we began to get a lot of feedback from his fellow coworkers. We were told that he seemed to be walking around in a fog. There had been a loss of confidence in his abilities from his coworkers. We were kind of the last to know. We lost our confidence in him being able to make safe decisions.
> [Ms. Sherman:] Feedback from other employees and walk arounds with him, his decision making was being affected. We tried to work with him; I walked with him on several occasions with EFS and an MSHA inspector. The Inspector even told us that he [Plaintiff] seemed to lack confidence.

ECF No. 20-1 at 4-5.

**B. MSHA retaliation claim; Reinstatement with accommodations**

On October 27, 2015, Plaintiff submitted a "Discrimination Report" with MSHA regarding the October 6, 2015 work-place dispute. Plaintiff reported that

he "had an argument about the brakes on the 980 front end loader", that "[a]n inspector showed up that day and I was told by the owner Jeff Sherman do not talk to the inspector because I talk to (sic) much[,]" and that "we argued I was fired". ECF No. 15-3 (capitalization modified). MSHA opened an investigation into potential retaliation. *See* ECF No. 14 at 3.

The Parties ultimately settled the MSHA claims on April 18, 2017. ECF No. 15-12. As part of the settlement, Defendants agreed to reinstate Plaintiff back to his previous position with accommodations as prescribed by Plaintiff's physician. ECF No. 15-12 at 2. However, Plaintiff notes that in November 2016, he "was badly injured in an (non-work related) ATV accident which required accommodations and light duty upon his return to work in 2017." ECF No. 21 at 3. As such, it is not clear whether the previously asserted conditions were present at the time of the settlement and reinstatement.

### C. **Plaintiff files suit**

Plaintiff brought this suit on August 14, 2018, alleging Defendants are liable for failure to accommodate; disparate treatment and wrongful termination; and retaliation in violation of Washington law. ECF No. 1 at 4-5. Plaintiff now requests the Court enter summary judgment on the issue of WLAD liability and requests the Court dismiss Defendants' "affirmative defenses". ECF No. 14.

//

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 6

## DISCUSSION

A. **Affirmative Defenses**

Plaintiff moves for summary judgment on three "affirmative defenses" raised by Defendants. Defendants raised four affirmative defenses in their Answer:

1. Plaintiff could not perform his job, with or without accommodations.
2. Plaintiff is not entitled to any relief as his own behavior estops him from seeking any relief.
3. Plaintiff has failed to mitigate his damages as required by law.
4. Accord and satisfaction.

ECF No. 13 at 6. Plaintiff argues (1) the first affirmative defense is contradicted by the record and not an affirmative defense, (2) the second affirmative defense lacks factual support and is also not an affirmative defense, and (3) the fourth affirmative defense fails because the underlying settlement did not include the claims brought in this suit. ECF No. 14 at 13-14. Defendants, without any explanation, responded: "Defendants will withdraw Affirmative Defenses 1, 2 and 4. Accordingly, the motion for partial summary judgment as to these three affirmative defenses is denied as moot.

B. **WLAD Liability**

Plaintiff requests summary judgment as to whether Defendants are liable under the Washington Law Against Discrimination (WLAD) for terminating his

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 7

employment in the Spring of 2016 before the mining season began. *See* ECF No. 21 at 1 (clarifying that the motion addresses the April 2016 termination). Plaintiff focuses on Defendants' reference to his ill health, but ignores the question of whether his impairments could reasonably be accommodated. With a disputed record like the one in this case, these issues are relegated to a jury.

The WLAD "prohibits an employer from discriminating against any person because of 'the presence of any sensory, mental, or physical disability[,]' RCW 49.60.180(3), and provides a cause of action "when the employer fails to take steps reasonably necessary to accommodate an employee's" disability. *Gamble v. City of Seattle*, 431 P.3d 1091, 1094 (Wash. Ct. App. 2018) (quoting *Johnson v. Chevron U.S.A., Inc.*, 159 Wash.App. 18, 27 (2010)). The WLAD defines disability as "the presence of a sensory, mental, or physical impairment that: (i) is medically cognizable ... or (ii) exists as a record or history; or (iii) is perceived to exist." RCW 49.60.040(7)(a).

> To set out a prima facie case for a failure to reasonably accommodate a disability, the plaintiff must show that (1) the employee had a [disability]; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality.

*Gamble*, 431 P.3d at 1094 (citing *Davis v. Microsoft Corp.*, 149 Wash.2d 521, 532 (2003), *Johnson*, 159 Wash.App. at 28, and RCW 49.60.040(7)(d)).

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

The Court finds that Plaintiff has not met his burden in demonstrating Plaintiff was qualified to perform the essential functions of the job in question at the time of his termination in 2016.[1] While Plaintiff argues he was able to perform the essential functions of the job with accommodation, Plaintiff rests his entire argument on the fact that Plaintiff was later reinstated with accommodations in 2017. ECF No. 14 at 12-13. However, it is not clear whether Plaintiff, when he was reinstated, suffered from the same conditions that he claimed shortly before he was terminated.[2] As such, there is a genuine issue of material fact as to whether the conditions alleged by Plaintiff in 2015 would preclude Plaintiff from working at the mine, with or without accommodation. This is further supported by the fact that: (1) Plaintiff's position, if not attended to properly, could result in serious injury or death, *see* ECF No. 19 at 3 ("Mr. Rawley . . . worked on an energized piece of equipment without the equipment being locked out and tagged out to prevent possible catastrophic injuries."); (2) the conditions claimed by Plaintiff

---

[1] The Court need not address the viability of the remaining elements of Plaintiff's prima facie case. Disputed issues of fact remain.

[2] Notably, the conditions alleged in 2015 are not mentioned in the 2017 settlement, and the limitations suggested by Plaintiff's physician in 2017 appear to relate *only* to injuries incurred in the 2016 ATV accident. ECF No. 21 at 3.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 9

appear to be severe; and (3) co-workers reported that they had lost confidence in Plaintiff's abilities and that Plaintiff was "walking around in a fog". *See* ECF No. 20-1 at 4.

Moreover, the Court is hesitant to presume that reinstating Plaintiff with accommodations did not impose an undue burden on Defendants. Given the reinstatement was part of a settlement with a "no admission" clause, Defendants may have been willing to provide an accommodation that imposed an undue burden in favor of settling the MSHA claim. Thus, the evidentiary significance of this event, if it is admissible, is not clear.

**ACCORDINGLY, IT IS ORDERED:**

Plaintiff Kelly Rawley's Motion for Partial Summary Judgment on Liability and Affirmative Defenses (ECF No. 14) is **DENIED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.

DATED February 28, 2019.



THOMAS O. RICE
Chief United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10